UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 09-CV-0004 (JFB) (ETB)

———————

PEOPLE OF THE STATE OF NEW YORK,

Plaintiff,

VERSUS

U.S. CAPITAL FUNDING, LLC,

Defendant.

———————

**MEMORANDUM AND ORDER**
August 9, 2011

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff, the People of the State of New York, by the Attorney General of the State of New York ("OAG"), commenced this action on January 5, 2009, against defendant U.S. Capital Funding, LLC ("U.S. Capital" or "defendant"), for alleged violations of the Fair Housing Act and New York State Human Rights Law for its alleged discriminatory practices of charging African-American and Latino borrowers significantly higher broker fees for mortgage broker services than the average amount charged to White borrowers. On May 27, 2009, the OAG and U.S. Capital entered into a consent decree (hereinafter "Consent Decree") that requires, *inter alia*, that U.S. Capital (1) pay sixty-thousand dollars ($60,000) in damages to the OAG to compensate the African-American and Latino borrowers charged higher broker fees than White borrowers, (2) provide periodic monitoring reports to the Attorney General regarding its operations, and (3) amend its policies and practices to comply with the law and the Consent Decree. Presently before the Court is the OAG's motion to enforce the Consent Decree and motion for civil contempt. Specifically, the OAG seeks an order: (a) declaring that U.S. Capital is not in compliance with the terms of the Consent Decree or the payment schedule so ordered by the Court on March 29, 2010 (hereinafter "the Court's March 29, 2010 Order") (collectively the "Orders"); (b) holding U.S. Capital in civil contempt and imposing compensatory sanctions in the amount of $20,000, which represents the remaining damages due under the Consent

Decree, plus costs and interest;[1] and (c) imposing a coercive sanction in the amount of $37,675 to ensure U.S. Capital's future compliance.[2] The OAG's motion is unopposed and defendant has failed to appear for conferences and hearings ordered by this Court regarding this matter.

For the reasons set forth below, the OAG's motion is granted in its entirety. Specifically, the Court finds that U.S. Capital is in civil contempt of court for its failure to make payments to the OAG pursuant to the terms of the Consent Decree and the Court's March 29, 2010 Order, and for its failure to comply with the reporting and compliance obligations under the Consent Decree. Accordingly, the Court imposes compensatory monetary sanctions in the amount of $20,000 plus interest from January 31, 2011, at the rate set in 28 U.S.C. § 1961, payable to the OAG within thirty days of this Memorandum and Order. In addition, the Court awards costs to the OAG that it expended in attempting to procure U.S. Capital's compliance with the Orders, in an amount to be determined after the OAG provides supplemental documentation. With respect to the request for coercive sanctions to ensure U.S. Capital's future compliance with the Consent Decree and the Court's Orders, the Court imposes a coercive sanction in the amount of $37,675 if defendant does not purge its contempt within thirty days of this Memorandum and Order.

I. BACKGROUND

The following facts are taken from OAG's submissions and the Court's review of the docket. As noted *supra*, defendant has not submitted any opposition and has failed to appear at any of the related conferences and hearings ordered by this Court.

A. The Consent Decree

This matter arises out of the OAG's investigation of U.S. Capital for its alleged discriminatory practices of charging African-American and Latino borrowers significantly higher broker fees for mortgage broker services than the average amount charged to White borrowers. On May 27, 2009, the Court so ordered the jointly proposed Consent Decree between U.S. Capital and the OAG. (OAG Aff. Ex A.) The Consent Decree requires, *inter alia*, that U.S. Capital pay sixty-thousand dollars ($60,000) in damages to the OAG to provide restitution to African-American and Latino customers who were charged significantly higher broker fees than charged to White customers regarding loans arranged by U.S. Capital from January 2006 through July 2007. In addition, the Consent Decree requires U.S. Capital to provide periodic monitoring reports to the Attorney General regarding its operations and to amend its policies and practices to comply with the law and the Consent Decree. (OAG Aff. ¶¶ 5, 7; Ex. A.) Pursuant to the Consent Decree, this Court retains jurisdiction over the parties and the matter until July 27, 2012 and retains all equitable powers necessary to enforce its terms, and the parties are permitted to enforce

---

[1] The Court construes the OAG's request for immediate payment of the $20,000 in damages remaining under the Consent Decree, plus costs and interest, as a request to impose a compensatory sanction in that amount. In any event, as discussed *infra* in footnote 9, the Court notes that the Consent Decree could also be enforced independent of the motion for contempt.

[2] By letter dated February 3, 2011, pursuant to the Court's Order, the OAG submitted, as discussed *infra*, recommendations for sanctions in the amount of $37,675.

the Consent Decree via motion to the Court after good faith efforts to resolve any dispute. (OAG Aff. ¶ 3; Ex. A ¶¶ 25-26, 30.)

### 1. The Payment Schedule and the Court's March 29, 2010 Order

Under the Consent Decree, U.S. Capital agreed to make eight monthly installments totaling $60,000, which represent damages to the African-American and Latino borrowers identified by the OAG. (OAG Aff. Ex. A ¶ 3.) The first seven installments were for $5,000 each and were due at the end of each month from May 31, 2009 until November 30, 2009, and the final installment was for $25,000 and was due on December 31, 2009. (*Id.*) The OAG received the first installment on June 5, 2009. (OAG Aff. ¶ 8.) Despite numerous good faith attempts from July 2009 until October 2009 to secure payment, including but not limited to emails, phone calls and letters to defendant, the OAG did not receive another installment. (*Id.* ¶ 9.) Accordingly, on October 15, 2009, the OAG sent a letter to the Court requesting a pre-motion conference in anticipation of moving to enforce the Consent Decree and for contempt. (*Id.*)

On November 5, 2009, the Court held a telephone pre-motion conference and gave U.S. Capital thirty days to comply with the Consent Decree and ordered defendant to contact the OAG to either make payment or negotiate a new payment schedule. (*Id.* ¶ 10.) Defendant failed to contact the OAG or make payment. (*Id.*) Accordingly, the OAG moved to enforce the Consent Decree and for contempt. (*Id.*) Defendant failed to respond. (*Id.*)

While the OAG's motions were pending, defendant retained new counsel, Scott Marinelli, Esq., who contacted the OAG and negotiated a new payment schedule with the first payment due on January 21, 2010. (*Id.* ¶ 11.) Defendant failed to make payment pursuant to this new schedule. (OAG Aff. ¶ 11; Ex. B.) On March 3, 2010, the Court held a telephone conference to discuss defendant's failure to respond to the pending motions and its failure to comply with the Consent Decree. (OAG Aff. ¶ 12; ECF No. 14.) The Court granted U.S. Capital seven days to negotiate a third payment schedule and respond to the pending motions. (*Id.*) Defendant did not contact the OAG. (*Id.*) On March 29, 2010, the Court held another telephone conference to discuss the pending motions at which the parties agreed to a third payment schedule. (*Id.* ¶ 13; ECF No. 18.) Accordingly, on March 29, 2010, the Court so ordered the new payment schedule and denied without prejudice the OAG's motion for contempt and motion to enforce the Consent Decree. (OAG Aff. ¶ 13 & Ex. C; ECF No. 19.) Pursuant to the new payment schedule, the remaining $55,000 was to be paid in eleven equal installments with the first payment due on April 15, 2010, and the subsequent payments due at each month end starting April 30, 2010 and ending on January 31, 2011. (OAG Aff. Ex. C; ECF. No. 19.)

Defendant made the first payment of $5,000 according to the terms of the new payment schedule. (OAG Aff. ¶ 14.) Defendant then made the next three payments, but only after "extensive follow-up" by the OAG. (*Id.*)[3] At this point, defendant had made payments totaling $25,000. The OAG did not receive the payment due on July 31, 2010 and, thus, filed a letter to the Court on

---

[3] The payment due on April 30, 2010 was received on May 6, 2010; the May 31, 2010 payment was received on June 3, 2010; the June 30, 2010 payment was received on July 7, 2010.

3

August 3, 2010 seeking to reinstate its motion based upon U.S. Capital's failure to make timely payments and failure to comply with the terms of the Consent Decree requiring defendant to submit a monitoring report to the Attorney General by July 12, 2010. (*Id.* ¶¶ 14, 16.) On August 17, 2010, the Court held a telephone conference to discuss this matter, but defendant failed to appear. (*Id.* ¶ 17.) The Court held another conference on August 23, 2010 and emphasized to defendant its obligations pursuant to the Consent Decree and the payment schedule pursuant to the Court's March 29, 2010 Order. (*Id.* ¶ 18; ECF No. 22.) The Court warned defendant that the Court would allow the OAG to reinstate its motion, without any further conferences, if there was one more instance of non-compliance. (*Id.*) In addition, the Court directed defendant's counsel, Mr. Marinelli, to file an appearance with the Court by the end of the week because he was representing the defendant in connection with this action. (*Id.*) As discussed *infra*, Mr. Marinelli failed to file an appearance and to date has not filed an appearance. (*Id.* ¶ 21.) Following that conference, the OAG received the July 31, 2010 payment on August 30, 2010, along with the August 31, 2010 payment, for a total of $35,000 in payments. (*Id.* ¶ 19.) The OAG did not receive the September 30, 2010 payment and filed a letter with the Court on October 4, 2010. (*Id.* ¶¶ 19, 22; ECF No. 25.) Subsequently, the OAG received the September 30, 2010 payment on October 12, 2010. (*Id.* ¶ 22.) The OAG did not receive the October 31, 2010 payment and defendant has made no further payments to date. In sum, defendant made payments totaling $40,000 and still owes $20,000 pursuant to the terms of the Consent Decree and the Court's March 29, 2010 Order. (*Id.* ¶ 22.)

Pursuant to paragraph 22 of the Consent Decree, defendant was to provide a monitoring report to the OAG and the New York State Banking Department by July 12, 2010. (*Id.* ¶ 15; Ex. A. ¶ 22.) Defendant failed to respond to OAG's inquiries and to produce the report. (OAG Aff. ¶ 15.) Defendant did not produce the report, until it was ordered to do so by the Court at the August 23, 2010 conference. (*Id.* ¶¶ 18, 20; Ex. E.) However, the report was deficient in several respects with respect to the loans brokered during the reporting period. (*Id.* ¶ 20; Ex. F.) Subsequently, U.S. Capital submitted an amended report which evidenced that it had violated paragraph 7(b) of the Consent Decree, which states that defendant cannot depart from the standard processing fee and the standard application fee unless exceptional circumstances exist, which must be documented in each customer's file. (*Id.*; Ex. F, G.) Specifically, the amended report evidenced that U.S. Capital departed from the standard fees in half of the loans it brokered during this time. (*Id.*; Ex. G.) Accordingly, the OAG requested that defendant provide documentation that exceptional circumstances existed to warrant these departures. (*Id.* ¶ 20; Ex. H.) To date, defendant has failed to produce documentation that exceptional circumstances existed to warrant its departure from its standard fees in over half of the loans it brokered during the reporting period. (*Id.*)[4]

2. Defendant's Failure to Appear

By letter dated August 30, 2010, Mr. Mims requested that the Court remove his name from the docket as counsel of record for U.S. Capital. Mr. Mims informed the Court

---

[4] In addition, defendant failed to provide its new broker fee policy or to select a qualified organization for fair lending training in a timely manner. (OAG Mem. of Law at 7-8, 11; OAG Aff. Ex. A. ¶ 7, 11.)

that he has "been told that [he is] not to appear in this matter in any way on behalf of U.S. Capital Funding, L.L.C. and [he believes] that Scott M. Marinelli, Esq. is handling all matters on behalf of U.S. Capital Funding, L.L.C." (ECF No. 23.) By Order dated September 8, 2010, the Court noted that Mr. Marinelli had failed to file a notice of appearance in this action to date, despite the Court's orders on August 17, 2010 and on August 23, 2010. Accordingly, the Court ordered that Mr. Marinelli submit a letter to the Court by September 13, 2010 explaining why he has not filed an appearance to date. (ECF No. 24.) Counsel failed to respond. By letter dated October 4, 2010, the OAG requested that the Court reinstate its motion to enforce provisions of the Consent Decree and motion for contempt against defendant. (ECF No. 25.) By Order dated October 13, 2010, the Court set a briefing schedule and ordered the parties to appear for a hearing on January 28, 2011, with respect to the OAG's contempt motion. (ECF No. 26.) In addition, the Court noted counsel's continued failure to appear and ordered that U.S. Capital, as a corporation, must retain new counsel and could not proceed *pro se* in this matter. (*Id.*) Despite that Order and the numerous prior orders by the Court, counsel failed to file a notice of appearance and neither counsel nor defendant appeared at the scheduled January 28, 2011 hearing. At the hearing, the Court ordered the OAG to submit a letter to the Court detailing the defendant's current violations of the Consent Decree and OAG's recommendations for sanctions. The OAG filed the letter on February 3, 2011. (ECF No. 33.) In an abundance of caution, the Court, by Order dated February 9, 2011, ordered that the OAG serve a copy of its letter detailing the Consent Decree violations and recommendations for sanctions upon defendant and Mr. Daniel Hesse, President of defendant U.S. Capital (*see* defendant's Answer; ECF No. 5), and ordered him to personally appear at a March 3, 2011 hearing regarding the OAG's contempt motion. (ECF No. 34.) The OAG served a copy of the February 9, 2011 Order on Mr. Hesse by certified mail. (*See* Certificate of Service, ECF No. 37.) Due to a conflict in the Court's trial calendar, by Order dated March 2, 2011, the parties were directed to appear before Magistrate Judge Boyle. Neither Mr. Hesse nor defendant's counsel appeared. At the hearing, the OAG's counsel informed Judge Boyle that she spoke to Mr. Hesse earlier in the morning and Mr. Hesse advised her that he would not be appearing at the hearing. (*See* March 3, 2011 Hearing Tr. at 2-3.)

B. Procedural History

The OAG filed the complaint on January 5, 2009. On May 27, 2009, the Court so ordered the jointly proposed Consent Decree. On December 7, 2009, the OAG filed a motion to enforce the Consent Decree and for civil contempt. On March 29, 2010, the Court so ordered the jointly proposed payment schedule and denied the OAG's motion without prejudice to renewal. On October 4, 2010, the OAG renewed its motion. On October 13, 2010, the Court set a briefing schedule and a hearing date of January 28, 2011. U.S. Capital failed to respond to the OAG's motion and failed to appear at the scheduled hearing. By letter dated February 3, 2011, the OAG submitted its recommendations for sanctions. On February 9, 2011, the Court set another hearing date of March 3, 2011 and the Court ordered that the OAG serve the Court's Order, the OAG's motion and recommendations for sanctions upon defendant and defendant's President, Mr. Daniel Hesse. Defendant and Mr. Hesse failed to respond or to appear. By letter dated July 19, 2011, the OAG informed the Court that defendant has failed to file its annual

monitoring report, which was due on July 11, 2011. Defendant did not respond. This matter is fully submitted and the Court has considered all the submissions of the parties.

## II. DISCUSSION
### A. Civil Contempt

Courts have "inherent power to enforce compliance with their lawful orders" through contempt proceedings. *Shillitanti v. United States,* 384 U.S. 364, 369-70 (1966). A finding of contempt is proper if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedic Electromedicina Comercial, LTDA v. GE Medical Systems Information Technologies, Inc.,* 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995)). It need not be established that the violation was willful to hold a party in civil contempt. *King,* 65 F.3d at 1058.

### B. Analysis

The OAG asserts that U.S. Capital disregarded the clear and unambiguous terms of the Consent Decree and Court's March 29, 2010 Order and requests an order adjudging defendant to be in civil contempt of court. As discussed *supra*, the OAG's application is unopposed. For the reasons set forth below, the Court finds defendant in civil contempt of court for failure to comply with the Consent Decree and the Court's March 29, 2010 Order.[5]

### 1. Clear and Unambiguous

With respect to the first element, the Court finds that the Consent Decree and the Court's March 29, 2010 Order were "clear and unambiguous." Turning first to the Consent Decree, the Court finds that it clearly and unambiguously outlined defendant's monetary obligations (*see* Consent Decree ¶ 3), and defendant's reporting, policy, practices and procedures obligations. (*Id*. ¶¶ 7, 22.) Similarly, with respect to the Court's March 29, 2010 Order, the parties jointly consented to the new payment schedule, which clearly and unambiguously stated that "defendant shall make the following payments totaling fifty-five thousand dollars ($55,000)." The Order then clearly annotated each of the eleven $5,000 installments with the first payment due on April 15, 2010 and each subsequent payment due at each month end starting April 30, 2010 and ending on January 31, 2011. (*See* OAG Aff. Ex. C; ECF. No. 19.) It is clear that defendant understood its obligations under the Orders because

---

[5] To the extent that the OAG argues that the Court should find the defendant in civil contempt for failure to comply with the Court's numerous orders to appear, the Court agrees. As noted *supra*, defendant's counsel failed to appear despite this Court's orders on August 17, 2010, August 23, 2010 and September 8, 2010. Furthermore, defendant failed to respond to the OAG's motion and failed to appear at the January 28, 2011 hearing to address the OAG's motion for contempt. In abundance of caution, on February 9, 2011, the Court ordered the OAG to serve its motion and recommendations for sanctions on defendant and Mr. Daniel Hesse, President of U.S. Capital, and then the Court set another hearing date for March 3, 2011 to permit defendant a final opportunity to respond and ordered Mr. Hesse to personally appear. Neither Mr. Hesse or counsel appeared. However, Mr. Hesse responded through the OAG's counsel, stating that he would not appear at the hearing. (*See* March 3, 2011 Hearing Tr. at 2-3.) Accordingly, in the alternative, the Court finds defendant in civil contempt of court for failure to comply with its orders to appear.

defendant's attorneys were in contact with the OAG regarding payments under the Orders and production of the required reporting and documents under the Consent Decree, and did in fact make some of the payments required under both the Consent Decree and the Court's March 29, 2010 Order. Specifically, as noted *supra*, defendant made payments totaling $40,000 of the total $60,000 required under the Consent Decree and the Court's March 29, 2010 Order.[6] Furthermore, as noted *supra*, the Court has held numerous conferences regarding defendant's compliance with the Orders and, at each conference, defendant was represented by counsel and at no time did counsel ever raise any issue with the clarity of defendant's obligations. Indeed, as noted *supra*, defendant even retained new counsel following the November 5, 2009 conference to negotiate a new payment schedule with the OAG. (OAG Aff. ¶ 11.) Accordingly, the Court finds that the Consent Decree and the Court's March 29, 2010 Order were "clear and unambiguous."

2. Compliance with the Orders

With respect to the next element, the Court finds that proof of defendant's noncompliance with the Orders is clear and convincing. Defendant has yet to comply with either the Consent Decree or the Court's March 29, 2010 Order. As discussed *supra*, under the Consent Decree so ordered by the Court on March 27, 2009, U.S. Capital agreed to make eight monthly installments totaling $60,000, which represented the damages to African-American and Latino borrowers for defendant's alleged discriminatory practices. It is undisputed defendant made the first installment for $5,000 in June 2009. Despite, however, the OAG contacting defendant numerous times between July and October 2009, defendant failed to make another payment under the Consent Decree. (OAG Aff. ¶ 9.) Accordingly, as discussed *supra*, the Court held, starting with the November 5, 2009 telephone conference and ending with the Court's March 29, 2010 Order, numerous conferences to address defendant's continued noncompliance with the Consent Decree (*id.* ¶¶ 10, 12, 13, 17, 18), which ultimately culminated with defendant negotiating and consenting to a third payment so ordered by the Court on March 29, 2010. Defendant then made seven of the eleven $5,000 payments pursuant to the Court's March 29, 2010 Order before, again, ceasing payment. To date, defendant still owes $20,000 of the original $60,000 in restitution.

Furthermore, U.S. Capital's noncompliance is not limited to its monetary obligations. It is undisputed that defendant also failed to comply with its other obligations under the Consent Decree—specifically, defendant failed to comply with providing a monitoring report and documentation to the OAG to ensure that it was not engaging in discriminatory and illegal practices by downwardly departing from its standard fees for certain customers. First, defendant failed to respond to OAG regarding the monitoring report and failed to provide it by July 12, 2010. (OAG Aff. ¶ 15; Ex. A. ¶ 22.) As with its monetary obligations due under the Consent Decree, U.S. Capital failed to produce the monitoring report until the Court intervened and ordered it to do so at the August 23, 2010 conference. (OAG Aff. ¶ 18,

---

[6] Defendant made the first $5,000 payment pursuant to the Consent Decree on June 5, 2009. After numerous conferences and after defendant retained new counsel to negotiate another payment schedule, the Court so ordered the March 29, 2010 payment schedule. Defendant then made seven of the eleven $5,000 payments pursuant to the Court's March 29, 2010 Order.

7

20; Ex. E.)[7] Second, despite the Court's intervention, the report was deficient in several respects with respect to the loans brokered during the reporting period and evidenced that defendant was possibly engaging in discriminatory practices. (OAG Aff. ¶ 20; Ex. F.) Specifically, after U.S. Capital submitted an amended report, the OAG identified over half the loans that defendant brokered during the reporting period violated paragraph 7(b) of the Consent Decree, which states that defendant cannot depart from the standard processing fee and the standard application fee unless exceptional circumstances exist and those circumstances must be documented in each customer's file. (OAG Aff. ¶ 20; Ex. F, G, H.) Once the OAG requested the documentation demonstrating exceptional circumstances, U.S. Capital ceased communication, and to date defendant has failed to provide the OAG with the documentation to warrant its departure from the standard fees. (*Id*.) Accordingly, the Court finds that proof of defendant's noncompliance is clear and convincing with respect to both the Consent Decree and the Court's March 29, 2010 Order.[8]

### 3. Diligent Efforts to Comply

With respect to last element, the Court finds that defendant has not diligently attempted to comply with the Orders. The record is clear that defendant has failed to comply with the Consent Decree, the Court's March 29, 2010 Order and now has refused to appear or respond to the OAG's motion for contempt. As discussed *supra*, U.S. Capital has been afforded every opportunity to comply with the Orders. Indeed, as discussed *supra*, the OAG engaged in time-consuming and resource intensive efforts to get defendant to comply with its obligations, and the Court has permitted defendant numerous extensions and the opportunity to renegotiate the respective payment schedules. Despite these efforts, defendant has failed to make the remaining payments under the Orders and has failed to produce the reports and documentation to the OAG, under the Consent Decree, to demonstrate that it is not engaged in discriminatory practices with regard to its departure from the standard fees in over half of the loans it brokered during the reporting period. In other words, there is no evidence in the record that defendant was reasonably diligent in attempting to comply with the Orders. To the contrary, the record reflects that defendant evaded its obligations and only made disclosures and payments when the Court intervened and warned defendant that OAG's motion for contempt would be reinstated. Finally, as discussed *supra*, defendant has now refused to respond to, or to appear at the scheduled hearings to address, the OAG's motion for contempt. Accordingly, the Court finds, by any standard of diligence, that defendant has not attempted to comply with the Orders.

In sum, when the facts are applied to the instant action, it is clear that the OAG has met its burden of demonstrating all of the elements necessary for the Court to conclude that defendant has committed civil contempt. Accordingly, the Court finds defendant in civil contempt of court for failure to comply with the Consent Decree and the Court's March 29, 2010 Order.

---

[7] The OAG received the report on August 27, 2010 after defendant was ordered to produce it at the August 23, 2010 conference.

[8] Although it need not be established that the violation was willful to hold a party in civil contempt (*see King*, 65 F.3d at 1058), the Court finds defendant's noncompliance is willful—namely, defendant's piecemeal compliance with its obligations occurred only after the Court's intervention.

8

C. Sanctions for Civil Contempt

The Court now turns to the appropriate sanctions to impose for defendant's civil contempt. As noted *supra*, the OAG's application is unopposed. Although the motion is unopposed, the Court has independently ensured that the sanctions imposed by the Court are legally and factually supported. The OAG requests that the Court should impose compensatory sanctions of $20,000, which represents the remaining damages under the Consent Decree for defendant's alleged discriminatory practices of charging African-American and Latino borrowers significantly higher broker fees for mortgage broker services than the average amount charged to White borrowers, plus costs and interest, and that the Court should impose coercive sanctions in the amount of $37,675 to ensure defendant's future compliance with the Consent Decree and the Court's Orders. For the reasons set forth below, the Court agrees.

Courts may impose civil contempt sanctions in order to achieve such compliance, and/or to compensate a party for losses or damages sustained by reason of the contemnor's noncompliance. *See Maggio v. Zeitz,* 333 U.S. 56, 67-68 (1948); *see also New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351-52 (2d Cir. 1989); *accord Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56-57 (2d Cir. 1982).

Sanctions that may be imposed for civil contempt include fines that cease to accrue when the noncomplying party purges itself of the contempt. *See Penfield Co. v. SEC,* 330 U.S. 585, 590 (1947). Sanctions should be calculated either "to coerce future compliance with the Court's order, or to compensate the complainant for losses stemming from the contemnor's past noncompliance." *A.V. By Versace, Inc. v. Gianni Versace, S.P.A.,* 279 F. Supp. 2d 341, 354 (S.D.N.Y. 2003) (quoting *United States v. United Mine Workers,* 330 U.S. 258, 303-04 (1947)). "To the extent that a contempt sanction is coercive, the court has broad discretion to design a remedy that will bring about compliance." *Paramedics Electromedicina Comercial, Ltda.,* 369 F.3d at 657. "In deciding whether to impose a coercive remedy, the district court must consider (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *EEOC v. Local 638,* 81 F.3d 1162, 1177 (2d Cir. 1996) (internal quotation marks omitted). The most important consideration is whether the sanction is reasonable in relation to the facts surrounding the contempt. *See New York State Nat'l Org. for Women ,* 886 F.2d at 1353; *see also Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979) (noting that courts have wide discretion in fashioning coercive contempt sanctions).

### 1. Compensatory Remedy[9]

The OAG requests that the Court impose compensatory sanctions in the amount of $20,000, which represents the outstanding balance of damages due under the terms of the Consent Decree, plus costs and interest. For the reasons set forth below, the Court agrees.

As discussed *supra*, it is undisputed that defendant has not paid the remaining $20,000 due under the Consent Decree and the Court's March 29, 2010 Order. Accordingly, as a compensatory remedy for defendant's contempt, the OAG is entitled to prompt payment of the outstanding balance of $20,000 in damages. *See Perfect Fit Industries, Inc.*, 673 F.2d at 56-57 (a compensatory sanction may be imposed to compensate the complainant for losses resulting from the contemnor's past noncompliance); *see also Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (compensatory sanctions are based upon a party's actual damages). Furthermore, because the OAG has been denied use of this money after they should rightfully have had it in their possession to make restitution to the African-American and Latino borrowers identified by the OAG, defendant shall pay interest from January 31, 2011, the date at which the final payment was due under the Court's March 29, 2010 Order, at the rate set in 28 U.S.C. § 1961. Accordingly, within thirty days of this Memorandum and Order, defendant shall pay the remaining $20,000 in damages, plus interest. Furthermore, the Court awards costs to the OAG that it expended in attempting to procure U.S. Capital's compliance with the Orders, in an amount to be determined after the OAG provides supplemental submissions documenting such costs, which the OAG shall provide to the Court within thirty days of this Memorandum and Order. *See Weitzman*, 98 F.3d at 719 (the district court may award appropriate attorney fees and costs to a victim of contempt); *Time Warner Cable of N.Y. City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 329 (E.D.N.Y. 1996) (attorneys' fees and costs "are damages for which the plaintiff is entitled to compensation, without need for reference to the statute [proscribing the underlying conduct]").

### 2. Coercive Remedy

The OAG requests that the Court impose a coercive sanction in the amount of $37,675 to ensure U.S. Capital's future compliance with the Consent Decree and the Court's Orders.[10] For the reasons set forth below, the Court agrees.

---

[9] The Court notes that the Consent Decree could also be enforced independent of the motion for contempt. *See Spallone v. United States,* 493 U.S. 265, 276 (1990); *see also United States v. Local 359, United Seafood Workers,* 55 F.3d 64, 69 (2d Cir. 1995) ("[A] consent decree is an order of the court and thus, by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties."); *accord United States v. IBT*, 998 F.2d 1101, 1106 (2d Cir. 1993). In other words, even apart from the civil contempt motion, the Court has the authority to impose these sanctions in order to enforce the Consent Decree entered by the parties and approved by the Court on May 27, 2009.

[10] In its February, 3, 2011 letter detailing the defendant's current violations of the Consent Decree and the OAG's recommendations for sanctions, the OAG recommended that the Court impose a coercive sanction in the amount of $37,675 to ensure defendant's future compliance with the Consent Decree and the Court's Orders.

With respect to the character and magnitude of the harm threatened by defendant's continued contempt, defendant's continued failure to provide the required reports and documentation under the Consent Decree makes it impossible for the OAG to determine whether U.S. Capital is engaging in discriminatory practices—namely, whether defendant is charging African-American and Latino customers higher broker fees than charged to White customers for loans arranged by U.S. Capital. As noted *supra*, the OAG has determined that defendant has downwardly departed from its standard fees in half of the loans it brokered during the reporting period and has failed to provide the documentation necessary to support this departure as provided under the Consent Decree. (OAG Aff. ¶ 20; Ex. F, G, H.) Accordingly, the OAG requests a coercive sanction in the amount of $37,675, which represents the standard fees that defendant has received during the time period the Consent Decree has been in effect. In other words, because defendant has refused to provide the documentation to prove that it is not engaging in discriminatory practices by downwardly departing from its standard fees for certain customers, the coercive sanction is calculated as the sum of the standard fees (the higher broker fees) that U.S. Capital charged customers during the reporting period. (*See* OAG letter dated February 3, 2011, ECF No. 33.)[11] Thus, the Court finds that a sanction of civil contempt and the imposition of a coercive sanction in the amount of $37,675 are reasonable in relation to the character and magnitude of defendant's continued disregard for its monetary and compliance obligations under the Orders.

With respect to the probable effectiveness of the coercive sanction in bringing about compliance, as noted *supra*, notwithstanding the fact that defendant has failed to respond to this motion and did not appear at either of the scheduled hearings, given the defendant's numerous delays and noncompliance regarding the remaining $20,000 in restitution and its reporting and compliance obligations under the Consent Decree, the Court concludes that, without the imposition of a coercive sanction reasonably calculated to represent the higher broker fees that defendant continues to collect from some customers, defendant will fail to comply with its obligations.

Finally, with respect to defendant's financial resources and the burden of the coercive sanction, U.S. Capital, as discussed *supra*, has willfully failed to respond to the OAG's motion or appear at the hearings scheduled by the Court, and, thus, defendant has offered no evidence that it is unable to pay such a fine. *See Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 (KAM)(ALC), 2011 WL 1004708, at *11 (E.D.N.Y. Mar. 18, 2011) ("The Contemnor had the burden of raising this defense and must establish an inability to pay 'clearly, plainly, and unmistakably.'" (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995))).

---

[11] The OAG based its recommendation upon a review of the initial monitoring report provided by defendant. In that report, the OAG argues that U.S. Capital brokered fifty loans, since the Consent Decree has been in effect, and departed from the standard application fee ($395) in half of the loans and departed from the standard processing fee ($695) in one-fifth of the loans that it brokered last year. (*See* OAG recommendations for sanctions at 2, ECF No. 33.) Thus, the OAG arrives at its recommended coercive sanction of $37,675 by multiplying the loans which defendant charged customers the higher broker fees by the associated standard fee. $37,675 = 25 * $395 ($9,875) plus 40 * $695 ($27,800).

Accordingly, the Court imposes a monetary sanction of $37,675. The $37,675 sanction is a coercive sanction designed in order to bring about defendant's compliance with its monetary and reporting and compliance obligations under the Consent Decree. *See Perfect Fit Industries, Inc.*, 673 F.2d at 57 ("When, however, the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance.") In order to purge its contempt, U.S. Capital must comply with all reporting and compliance obligations under the Consent Decree within thirty days of this Memorandum and Order.[12] In other words, although the Court has imposed a coercive monetary sanction, the Court has provided a "purge" provision, by which U.S. Capital shall avoid the $37,675 sanction if it fully purges its contempt within thirty days of this Memorandum and Order. *See Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994) (explaining that the contemnor must have the opportunity to "reduce or avoid the fine through compliance"); *see also Mackler Productions, Inc. v. Cohen*, 146 F.3d 126, 129 (2d Cir. 1998) ("[T]he $10,000 sanction imposed in this case . . . did not seek to coerce future compliance, and no opportunity to purge was provided."). "It is therefore clear that punishment of past wrongdoing is not the objective of the fines," but rather coercion of U.S. Capital to conform its conduct to the Consent Decree and the Court's Orders. *New York State Nat'l Org. For Women v. Terry*, 159 F.3d 86, 95 (2d Cir. 1998). In sum, the Court finds that, after considering the elements, the imposition of this coercive sanction is designed to bring about defendant's compliance.

IV. CONCLUSION

For the reasons stated above, the Court grants the OAG's motion in its entirety. Specifically, defendant is adjudged to be in civil contempt for its failure to pay the remaining $20,000 in restitution under the Orders and its failure to comply with its reporting and compliance obligations under the Consent Decree.[13] The Court imposes: (1) compensatory monetary sanctions in the amount of $20,000, which represents the outstanding balance of damages due under the terms of the Consent Decree, plus interest from January 31, 2011, at the rate set in 28 U.S.C. § 1961, payable to the OAG within thirty days of this Memorandum and Order;[14] and (2) a coercive sanction in the amount of $37,675 if defendant does not purge its contempt by complying with all reporting and compliance obligations under the Consent Decree within thirty days of this

---

[12] The Court notes that in order to purge its contempt, defendant must comply with all of its past and current reporting and compliance obligations under the Consent Decree. For example, by letter dated July 19, 2011, the OAG informed the Court that defendant has failed to file it annual monitoring report, which was due on July 11, 2011. In other words, defendant's obligations are not limited to the past reporting period; in order to purge its contempt, defendant must be in *full* compliance with the Consent Decree within thirty days of this Memorandum and Order.

[13] As discussed *supra* in footnote 5, the Court finds, in the alternative, that defendant is in civil contempt of court for failure to comply with the Court's orders to appear dated August 17, 2010, August 23, 2010, September 8, 2010, October 13, 2010 and February 9, 2011.

[14] As indicated *supra*, the Court also awards costs to the OAG associated with its efforts to enforce defendant's compliance with the Consent Decree and the Court's March 29, 2010 Order, in an amount to be determined after the OAG provides supplemental submissions documenting such costs.

Memorandum and Order.[15]

The OAG shall serve this Memorandum and Order upon defendant and its President, Mr. Daniel Hesse, and provide proof of service to the Court.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 9, 2011
Central Islip, New York

\* \* \*

Attorneys for plaintiff are Sunita Kini-Tandon, Jeffrey K. Powell, Spencer Brandt Freedman and, Alphonso David, Office of the New York State Attorney General, Civil Rights Bureau, 120 Broadway, New York, NY 10271. Defendant has failed to appear.

---

[15] Defendant shall deposit these funds with the Clerk of the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, and the funds will be held by the Clerk of the Court in interest until further Order of the Court.